UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRE RENEE READUS, CDCR #AY-4602,<br>Plaintiff,<br>vs.<br>MONTGOMERY, San Diego Sheriff Head Medical Officer, DR. MOLINA, Physician at San Diego Sheriff Dept., GARIBREY and ORTIZ, Sheriff Deputies<br>Defendants. | Case No.: 3:26-cv-4352-RBM-DDL<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 2]; and**<br><br>**2) DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b).** |

On July 27, 2026, Plaintiff Pierre Renee Readus, a state prisoner proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a Motion to Proceed In Forma Pauperis ("IFP"). (Docs. 1–2.)

## I. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP.

*See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1), (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff has submitted a copy of his inmate trust account statement attested to by a trust account official. (Doc. 3 at 4.) The document shows he had an average monthly balance of $58.86 and average monthly deposits of $66.90, with an available balance of $15.84. (*Id.*) The Court **GRANTS** Plaintiff's motion to proceed IFP and assesses an initial partial filing fee of $13.38. However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered.") Plaintiff remains obligated to pay the entire $350 statutory fee in full pursuant to the installment provisions of 28 U.S.C. § 1915(b)(1)–(2).

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Allegations in the Complaint

Plaintiff alleges that on October 19, 2024, while housed at the George Bailey Detention Facility in San Diego, California, he began experiencing chest pains about 5:00 p.m. (Doc. 1 at 3.) They became worse the next day, and at 12:50 p.m. during a wellness walk he notified a floor deputy of chest pain and an irregular heartbeat. (*Id.*) At 1:00 a.m.

he notified the watch tower via the emergency intercom of his situation. (*Id.*) At 6:00 p.m. on October 21, 2024, Plaintiff notified floor deputy Acedo of his chest pain and was told a shift change was in progress but that Acedo would notify the night shift of the emergency. (*Id.* at 4.) At 10:00 p.m. Plaintiff notified floor deputy Fiaribrey of chest pain and the need for emergency care. (*Id.*) At 10:30 p.m. he notified the watch tower via an intercom of his medical emergency. (*Id.*) A Latino inmate requested emergency medical care at 7:00 p.m. and was escorted to the infirmary but Plaintiff's requests were ignored. (*Id.*) His requests for medical care were ignored on October 22 and 23 as well. (*Id.*)

On October 24, 2024, Plaintiff "went 'man down' to get medical care for chest pain." (*Id.* at 5.) At the infirmary a nurse told Plaintiff that no doctor was on duty, gave him Tums as medication and had him sit shackled and cuffed in a holding cell for three hours. (*Id.*) The nurse informed Plaintiff that his chest pain was related to his stomach issues which he had been complaining about for several months. (*Id.*) On October 28, 2024, a nurse came to his cell and told him he had an appointment for an ultrasound the next day. (*Id.*) At noon on October 29, 2024, Defendants Sheriff's Deputies Garibrey and Ortiz escorted Inmate Alexander from the next cell to an ultrasound appointment. (*Id.*) When Alexander returned, Plaintiff asked Garibrey if he was next but was ignored. (*Id.*) At 3:00 p.m. a medical deputy came to Plaintiff's cell and asked him to sign a refusal form indicating he had refused his appointment. (*Id.*) When Plaintiff told the deputy he had not refused, the deputy told him Garibrey said he had refused. (*Id.*)

Plaintiff filed an inmate grievance on November 7, 2024, complaining of denial of medical care. (*Id.*) He received a response on November 26, 2024, but "there was no name of 'receiving staff member,' there was no 'JIMS' entry of grievance to computer system." (*Id.*) Plaintiff filed a grievance seeking medical care on November 26, 2024, "to no avail." (*Id.*) "For 13 consecutive weeks plaintiff was asked to sign consent form and compliance to not eat or drink in preparation for ultrasound appointment following day." (*Id.*)

Plaintiff claims Defendant San Diego County Sheriff's Department Head Medical Officer Montgomery was negligent in his or her supervision of medical staff and deputies

who escort inmates to medical appointments, and that Defendant San Diego County Sheriff's Department physician Dr. Molina committed negligence and medical malpractice for failing to provide Plaintiff with an ultrasound. (*Id*. at 2.) He claims Defendants San Diego County Sheriff's Deputies Garibrey and Ortiz were negligent in failing to escort him to an ultrasound, that Garibrey falsely claimed Plaintiff refused an ultrasound appointment, and that Ortiz permitted his partner to document that false refusal. (*Id*.) Plaintiff claims his rights to medical care, equal protection, and to be free from cruel and unusual punishment were violated. (*Id*. at 3–4.)

**C. Discussion**

**1. Eighth Amendment Medical Care Claims**

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to" his constitutional rights. *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*. (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)); *see also Wilhelm*, 680 F.3d at 1122 (holding that a prisoner plausibly alleges an Eighth Amendment violation where a failure to treat a serious medical need "could result in further significant injury or the unnecessary and wanton infliction of pain" and "the defendant's response to the need was deliberately indifferent.")

Plaintiff's allegations that Defendants were negligent and committed medical malpractice fail to state an Eighth Amendment claim because allegations of inadequate

medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not show deliberate indifference) (quoting *Estelle*, 429 U.S. at 106) (finding an inadvertent failure to provide medical care, negligence or malpractice and differences of opinion over medical treatment do not state an Eighth Amendment claim)).

Plaintiff's allegations that Head Medical Officer Montgomery is liable for the failure to supervise and train staff and deputies who failed to escort him to an ultrasound also fails to state a claim. "[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676–77 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution.") "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (citation modified). There are no factual allegations in the Complaint that Montgomery knew Plaintiff needed but did not receive an ultrasound or other medical care, and therefore Plaintiff does not plausibly allege Montgomery knew of and failed to prevent an Eighth Amendment violation. *Id.*

Plaintiff alleges deputy Garibrey ignored him when he asked if it was his turn to be escorted to an ultrasound and then falsely claimed he had refused his appointment, and that deputy Ortiz allowed his partner to document that refusal. There are no factual allegations in the Complaint that either of these Defendants were aware that Plaintiff had a serious medical need for an ultrasound and were deliberately indifferent to that need. That is, that

they were aware of facts from which they could have drawn an inference that the failure to escort Plaintiff to his ultrasound appointment at that time posed a substantial risk to his health or safety and actually drew such an inference. Rather, Plaintiff alleges that a nurse told him his chest pains were caused by his stomach issues (Doc. 1 at 5), and there are no allegations Garibrey or Ortiz knew the failure to escort Plaintiff to the appointment posed an immediate risk. *See Estelle*, 429 U.S. at 106 (finding no Eighth Amendment claim for "an inadvertent failure to provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition"). The Complaint is unclear whether Plaintiff ever received an ultrasound or whether it revealed he had a serious medical need for it. Plaintiff indicates that the ultrasound was continuously postponed for 13 weeks (Doc. 1 at 4), but does not plausibly allege any actions by Garibrey or Ortiz caused that delay. If Plaintiff wishes to proceed with an Eighth Amendment deliberate indifference claim against these Defendants, he must set forth factual allegations which plausibly allege they knew he had a serious medical need to be escorted for an ultrasound and, knowing of that need, deliberately refused to escort him. If Plaintiff wishes to proceed with a deliberate indifference claim based on his initial requests for medical treatment being ignored, he must set forth factual allegations that a defendant knew of and deliberately disregarded a serious need for medical care. To the extent he intended to bring a claim based on an inadequate response to his grievance, he has not stated a claim. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("The Supreme Court has held that . . . to obtain a protectable right an individual must have a legitimate claim of entitlement to it, [but] there is no legitimate claim of entitlement to a grievance procedure.") (citations and quote marks omitted); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.") Plaintiff's Eighth Amendment claims are dismissed for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

///

///

**2. Equal Protection Claim**

Plaintiff alleges an equal protection violation, presumably based on the allegation that a Latino inmate requested emergency medical care and was escorted to the infirmary while Plaintiff's requests were ignored. (Doc. 1 at 4.) The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). A plaintiff can state an equal protection claim by setting forth facts which plausibly allege intentional discrimination based on membership in a protected class. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause).

Plaintiff fails to set forth factual allegations plausibly alleging he was similarly situated to the Latino inmate who was escorted to the infirmary, as there are no allegations that their medical emergencies were comparable. The Complaint does not identify who escorted the other inmate or why Plaintiff contends the decision was made on the basis of race, other than Plaintiff's observation of the other inmate's race. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim). If Plaintiff wishes to proceed with an equal protection claim he must set forth factual allegations which plausibly show he and the other inmate were similarly situated in regard to their medical emergency and that a defendant treated Plaintiff differently because of his race.

///

///

**3. State law claims**

To the extent Plaintiff intended to bring claims under state law for medical malpractice and negligence, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") Because all federal claims have been dismissed from this action, the Court declines to exercise supplemental jurisdiction over any state law claims at this time.

**D. Leave to Amend**

Because Plaintiff is proceeding pro se, the Court will grant an opportunity to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**III. CONCLUSION AND ORDERS**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Application to Proceed IFP (Doc. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $13.38 initial filing fee as well as the remaining $336.62 balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). *The initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed.*

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation,

P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff until **December 21, 2026** to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated: November 6, 2026

Ruth Bermudez Montenegro

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE